```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

DONATA VELAZQUEZ, individually,    :
also known as "Issabelle E.
Velazquez,"                        :
                                        16 Civ. 5605 (HBP)
                Plaintiff,         :
                                        OPINION
     -against-                     :    AND ORDER

THE ESTATE OF MURRAY H. ANTONIER,  :

                Defendant.         :

-----------------------------------X
```

PITMAN, United States Magistrate Judge:

This matter is before me on the parties' application to approve their settlement agreement (Docket Item ("D.I.") 25, 26). All parties have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c).

Plaintiff Donata Velazquez alleges that she was employed by Murray H. Antonier as a live-in home attendant from approximately July 2008 up until Antonier's death in July 2015. Antonier's estate is represented by the Bronx County Public Administrator, a quasi governmental agency that administers the estates of deceased individuals who have no known next of kin or no qualified executor or administrative ("Defendant"). The action is brought under the Fair Labor Standards Act (the

"FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law for allegedly unpaid minimum wages and overtime premium pay. Plaintiff also asserts claims based on Antonier's alleged failure to provide certain notices as required by the Labor Law. Although the action was commenced as a collective action with respect to the FLSA claims, the parties reached the proposed settlement prior to the matter being conditionally certified as a collective action. Thus, the only parties to the settlement are Velazquez and Defendant.

The parties reached their proposed settlement after a conference before the Honorable Kevin Nathaniel Fox, United States Magistrate Judge, and therefore, my knowledge of the underlying facts and the justification for the settlement is limited to the parties' pleadings, the ex parte letters the parties submitted to Judge Fox in advance of the settlement conference and the representations in counsels' submissions in support of settlement approval. Plaintiff asserts that when she was employed by Antonier, she worked 24 hours a day, seven days a week and performed a variety of tasks, including preparing and serving meals, grocery shopping, picking up medicine and dry cleaning, household cleaning, laundry, assisting with personal hygiene and taking Antonier to appointments outside of the home. Plaintiff asserts that for one month at the beginning of her

2

employment, Antonier paid her $15 per hour for 13 hours per day for six days per week in cash, totaling $1,170.00 per week. Antonier then stopped paying plaintiff a salary and instead paid her rent, telephone and electric bills, all of which had a total value of $1,136.00 per month. Plaintiff provided Defendant with a "Bill for Estate" estimating that she is owed $561,491.52.

Defendant denies plaintiff's allegations and argues that plaintiff has failed to produce documentation sufficient to allow Defendant to evaluate plaintiff's claim. Defendant also argues that the FLSA's wage-and-hour requirements do not apply to plaintiff because she was not "engaged in commerce or in the production of goods for commerce" and because Antonier was not "an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a).[1]

The parties have agreed to a total settlement of $175,000.00 (Stipulation of Settlement, dated May 30, 2017 ("Settlement Agreement"), annexed as Ex. C to Notice of Motion for So Ordered Stipulation of Settlement & Enforcement (D.I. 25)). Plaintiff's counsel has agreed to reduce his compensation

---

[1] It is not clear from the parties' submissions that they are aware of the provision of the FLSA that applies to domestic workers. See Velez v. Sanchez, 693 F.3d 308, 326 (2d Cir. 2012) (noting that "[i]n 1974, Congress amended the FLSA to extend the minimum wage protection to domestic workers," citing 29 U.S.C. 206(f)).

3

for fees and costs from 33.33% to 20% of the total settlement amount, i.e., $35,000.00. Thus, after deduction of counsel fees, plaintiff's net recovery is $140,000.00.

> Court approval of an FLSA settlement is appropriate "when [the settlement] [is] reached as a result of contested litigation to resolve bona fide disputes." Johnson v. Brennan, No. 10 Civ. 4712, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." Id. (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)).

Agudelo v. E & D LLC, 12 Civ. 960 (HB), 2013 WL 1401887 at *1 (S.D.N.Y. Apr. 4, 2013) (Baer, D.J.) (alterations in original). "Generally, there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (Gorenstein, M.J.) (internal quotation marks omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." Beckman v. KeyBank, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (Ellis, M.J.), citing Lynn's Food Stores, Inc. v. United States, supra, 679 F.2d at 1353-54.

In Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the Honorable Jesse M. Furman, United States

4

District Judge, identified five factors that are relevant to an assessment of the fairness of an FLSA settlement:

> In determining whether [a] proposed [FLSA] settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

(internal quotation marks omitted).

The parties have not provided sufficient information for me to evaluate whether the settlement is fair and reasonable. Under the settlement, plaintiff will receive approximately 25% of the estimated "Bill for Estate" of $561,491.52 after the deduction of counsel fees. However, it is not even clear if $561,491.52 is an accurate estimate of plaintiff's unpaid wages. For example, although plaintiff alleges that she started working for Antonier in July 2008, the "Bill for Estate" calculates unpaid wages for the entirety of 2008. Although there may be a rational basis for the settlement amount, the parties have failed to present any substantive argument addressing the fairness of the settlement agreement. Thus, the parties should provide a

supplemental letter explaining why the settlement is fair and reasonable.

The settlement agreement contains several general releases. In one section, the Settlement Agreement provides that

> (c) "Claims Released" with respect to only the Plaintiff VELAZQUEZ means any and all claims, demands, rights, liabilities, damages, penalties, liquidated damages, punitive damages, actions, causes of action and/or other legal responsibilities, in any form whatsoever, whether known or unknown, unforeseen, unanticipated, unsuspected, or latent, that (a) have accrued prior to the date of approval of this settlement by the Court and marked "So Ordered" by the same, and (b) have been or could have been asserted by VELAZQUEZ, or an agent, successor, assign, heir, executor or administrator of VELAZQUEZ, whether directly, indirectly, representatively, derivatively or in any other capacity, against ANTONIER. The Claims Released include, but are not limited to, all claims arising under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (the "FLSA"), all claims for attorneys' fees, costs and expenses, and all claims under any other federal, state, or local law, whether arising or emanating from statute, executive order, rule, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and equity (including, restitution, unjust enrichment and quantum merit), and including those claims that were asserted or could have been asserted in the above-captioned case, any claims that monies received from the settlement are compensation eligible for retirement or other employee benefit plans of ANTONIER, and all claims relating to, arising out of, or in any way connected with VELAZQUEZ's former employment, the cessation of that employment, the compensation or benefits payable in connection with that employment or the cessation of that employment and/or any other interaction with ANTONIER that occurred prior to the date of approval of this settlement by the Court. . . .

6

> (p) "Released Parties" means (i) ANTONIER, and (ii) the Public Administrator, Bronx County as Administrator.
>
> (q) "Settled Claims" means any and all state, local or federal claims, whether known or unknown, which were asserted, or could have been asserted in this FLSA Collective Action against the Released Parties and which emanate from the same facts set forth in the FLSA Collective Action on behalf of VELAZQUEZ (or her agents, successors, assigns, heirs, executors or administrators) with respect to the time that she was employed by ANTONIER.

(Settlement Agreement ¶ 2 (c), (p) ,(q)). The Settlement Agreement also states that "[t]his Settlement Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Released Parties and the Parties, as previously defined" (Settlement Agreement ¶ 26).

The Settlement Agreement goes on to state that by the agreement, "VELAZQUEZ shall be deemed to have released and forever discharged the Released Parties (ANTONIER and the Bronx County Public Administrator) from any and all Claims Released, whether known or unknown" (Settlement Agreement ¶ 9(a)).

The Settlement Agreement also refers to a future release to be executed by plaintiff:

> <u>Release Language on Settlement Checks</u>. The following language shall be included in a separate General Release to be executed by VELAZQUEZ:
>
> My signature on this General Release constitutes a full and complete release of ANTONIER and the Bronx County Public Administrator, and any affiliated entity, related entity, successor, assign, or division of the

7

> same; of all Settled Claims that I agreed to settle in
> the settlement of <u>Donata E. Velazquez, a/k/a Issabelle
> E. Velazquez v. The Estate of Murray H. Antonier</u>,
> presently pending in the United States District Court
> for the Southern District of New York.  Case No. 16
> Civ. 5605 (HBP) assigned, namely, all federal, state or
> local claims for unpaid minimum wage and overtime
> during the time I was employed by ANTONIER.

(Settlement Agreement ¶ 10).

In yet another provision, the Settlement Agreement provides that the settlement payment shall be

> in full satisfaction of all of VELAZQUEZ's claims
> arising under the Fair Labor Standards Act, 29 U.S.C. §
> 201, <u>et seq</u>. (the "FLSA"), all claims for attorneys'
> fees, costs and expenses, and all claims under any
> other federal, state, or local law, whether arising or
> emanating from statute, executive order, rule, regula-
> tion, code, common law, or other source, including, but
> not limited to, all actions sounding in tort, contract,
> and equity (including, restitution, unjust enrichment
> and quantum merit), and including those claims that
> were asserted or could have been asserted in the
> above-captioned case, any claims that monies received
> from the settlement are compensation eligible for
> retirement or other employee benefit plans of ANTONIER,
> and all claims relating to, arising out of, or in any
> way connected with VELAZQUEZ's former employment, the
> cessation of that employment, the compensation or
> benefits payable in connection with that employment or
> the cessation of that employment and/or any other
> interaction with ANTONIER that occurred prior to the
> date of approval of this settlement by the Court.

(Settlement Agreement ¶ 13).

The release language above is not limited to wage-and-hour issues or to the claims at issue in this lawsuit; rather the settlement resolves all claims or potential claims plaintiff may

8

have against the Defendant.  Numerous judges in this Circuit have rejected general releases in FLSA settlement agreements that are not limited to wage-and-hour issues.  See Leon-Martinez v. Central Café & Deli, 15 Civ. 7942 (HBP), 2016 WL 7839187 at *1 (S.D.N.Y. Dec. 19, 2016) (Pitman, M.J.) (collecting cases); see also Alvarez v. Michael Anthony George Constr. Corp., No. 11 CV 1012 (DRH)(AKT), 2015 WL 10353124 at *1 (E.D.N.Y. Aug. 27, 2015) (rejecting release of all claims "whether known or unknown, arising up to and as of the date of the execution of this Agreement" because it included "the release of claims unrelated to wage and hour issues" (internal quotation marks omitted)).[2]

Another problem with the release language, like the release in Flores v. Hill Country Chicken NY, LLC, 16 Civ. 2916 (AT)(HBP), 2017 WL 3448018 at *2 (S.D.N.Y. Aug. 11, 2017) (Pitman, M.J.), is that it would bar claims by plaintiff unrelated to wage and hour issues not only against Defendant, but also against a broad array of persons, including related enti-

---

[2]A release that is limited to claims arising under the FLSA is permissible.  See Boyle v. Robert M. Spano Plumbing & Heating, Inc., 15 Civ. 2899 (KMK), 2016 WL 1688014 at *3 (S.D.N.Y. Apr. 27, 2016) (Karas, D.J.); Ocasio v. Big Apple Sanitation, Inc., No. 13 CV 04758 (CBA)(LB), 2016 WL 5376241 at *2 (E.D.N.Y. Mar. 16, 2016) (Report & Recommendation), adopted by, 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016); Martinez v. Gulluoglu LLC, 15 Civ. 2727 (PAE), 2016 WL 206474 at *2 (S.D.N.Y. Jan. 15, 2016) (Engelmayer, D.J.).

ties, successors, assigns, or divisions of the same. Therefore, the scope of the release language above is also impermissible. See Lopez v. Poko-St. Ann L.P., 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (Moses, M.J) (rejecting a general release that released a "long list" of entities and persons related to defendants from "every imaginable claim").

Therefore, I cannot approve the settlement with the release language noted above. In an amended settlement agreement, the parties should more narrowly define the claims and the parties that are being released.

Accordingly, the parties' application to approve the Settlement Agreement (D.I. 25, 26) is denied without prejudice to renewal. Within 30 days of the date of this Order, the parties are to provide the information sought and a revised settlement agreement that eliminates the foregoing issues or advise the Court as to whether they intend to proceed with the litigation.

Dated: New York, New York
November 2, 2017

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel